We have Birchette and Ms. Platt. It's a pleasure to see you. Always, Your Honor. Good morning, Your Honors. And may it please the Court, I'm Caroline Platt, Birchette and Birchette. The trial court in this case erred when it denied the defense requests to investigate a potential Sixth Amendment claim under a Pena-Rodriguez. The court committed a legal error by using the wrong standard, the wrong legal standard. Could you get the microphone a little closer and speak up because I want to be sure I catch what you have to say. Thank you, sir. The district court's primary error was that it used the wrong legal standard in denying trial counsel's request to investigate the potential constitutional claim of racial bias in jury deliberations. The court misapplied the standard, which the government and I agree that the standard should have been informed by the local rules. The just a couple of months before the trial in this case, says that investigations of potential claims should be informed by the local rules and professional conduct rules of the various jurisdictions. Local Rule 24C of the Eastern District of Virginia, where this trial happened, says that you need a good cause to have a motion granted to talk to jurors after a trial. And in this case, my colleague, trial counsel, went directly back to the courthouse and informed the Assistant United States Attorneys of the statements made by Juror Martin. What, what do you do with the trial court's finding here? That quote, there was no indication that any juror relied on racial stereotypes or almas to convict the defendant because that was a, that was a finding. So Your Honor, I think that gets to two intertwining errors. I do not think that it was a finding of fact. There, the only fact in this case right now is the affidavit from from the paralegal in our office who said that the one statement is the two of you are only doing this because of race. The other primary statement is it's a race thing for you. Those are the two most important statements that that Juror Martin made. Judge, the district judge did not find that these statements did not happen. That would be a disputed finding of fact. The finding, the factual finding is these statements exist. And then the question is a legal question. Is the allegation of these statements good cause under Local Rule 24C to investigate, to interview the jurors? And so the district judge then made two sort of intertwining legal errors in applying the good cause standard under your not your under the court's decision. And I don't know if it's gravely or gravely under, let's go with gravely under gravely. Good cause requires only a threshold showing it's a very low bar. And so in this case, the existence of Juror Martin's statements voluntarily offered to defense counsel, when we couldn't ask follow up questions, is the threshold showing? I mean, the court in Pena-Rodriguez also says, not every offhand comment indicating racial bias or hostility will justify setting aside the no impeachment bar to allow further judicial inquiry. To qualify the statement must tend to show that in the juror's vote to convict. Now, so the question then becomes, what's an offhand comment? What's not? And it would seem to me that, you know, a trial judge who's close to the trial, and the dynamics of the trial, and has had some interaction with the jurors or observed interaction with the jurors, would be a classic discretionary call on the part of a district judge. So Your Honor, that brings me to the second intertwined legal error of the good cause standard. I think that gets to the motion for new trial phase that we never got to. All we're asking for is to interview the jurors. This is an investigation stage. And so the district court required us to prove a Pena- Rodriguez violation of racial bias infecting jury deliberations, in order to investigate whether or not we could see whether there was racial bias. So I understand your point. So you're not arguing that a white light, a white lady said the two of you are only doing this because of race is by itself enough to impeach the, I'm sorry, to breach the no impeachment rule under Pena-Rodriguez. That does not rise to the level of Pena-Rodriguez. I don't want to waive that argument for future litigation. That's not the argument you're making right now. Right now, you're saying that doesn't rise to the level. But that's not the under 24C. But I think the way the district court was approaching this was, look, under 20, I'm not requiring you to prove anything. You don't have to prove that the white lady actually said that. You don't have to prove that white lady refers to a juror and that the two of you are the two black jurors. I'm going to sort of go ahead. You're at this threshold level. Fine. You've made a threshold showing that a white juror said to the two black jurors, you're doing this because of race. But, but you've made a threshold preliminary showing of something that's not good enough. And so why is that wrong? Well, so in a jurisdiction like the Eastern District of Virginia, where Mr. Burchette's counsel, who are my colleagues, coincidentally, could not ask a follow up question to say that we can't ask anything like, did you mean another juror? Was the white lady were you talking about, you know, I know, but I'm saying I read the district court as sort of giving you all of that. I'll grant you all those inferences that you might be able to clear up if you talk to him. But even with all those inferences going your way, there's just not enough here. So, but I guess given the low bar of threshold showing that there was overt statements about race made from one juror, taking all that is true, made from one juror to two other jurors that given the Allen charge, given juror Williams request to be excused from the jury, given everything else that the limited facts we do know without being allowed to do an investigation, I'm not at this point saying that that would be enough for the motion for a new trial, though, again, I don't want to waive that for any future litigation. If we get that far, it's certainly a threshold showing. So the language from from gravelly says that it should not be a fishing expedition. In that case, there was no allegation that was an improper outside influence claim. This is a racial bias claim. But if you substitute racial bias and deliberations for the improper outside influence language in just the statement in gravelly there, they hadn't made any threshold showing even that there was an allegation of that. And so what can you just tell me what exactly is the standard that you are proposing for when a defendant is entitled as a matter of law? So it's an abusive discretion to a good cause interview of a juror under Rule 24 C regarding racial bias. If it's not the if it's not that you have to make a threshold showing of something that would violate or be inconsistent with Pena Rodriguez, what is it? Again, I don't concede that this would not understand. Okay, so I think in a case where a juror has and I'm not dodging your question in Pena Rodriguez, they say that a juror voluntarily coming forward is a backstop, right? That that is a way that you would know that this happened. That's what we have here is what Juror Martin did in a jurisdiction such as the EDVA where we have this local rule. So in a world with local Rule 24 C, where a juror provides information that overt statements directly about race were made in jury deliberations, a district court must allow some form of an investigation of that claim. We are not saying whether it has to be a hearing, whether it has to be affidavits, you know, that I think is really undermined the no impeachment rule. I mean, you know, that I think that in Pena Rodriguez, that was a very narrow exception to the no impeachment rule. And it was, why is it a narrow exception? Because jurors give of their time to serve the criminal justice system. They serve at some considerable inconvenience to themselves and their members of jury service. So post-verdict collateral interrogation, I don't know, it's going to be a discouragement to people coming forward and serving on juries, which is something I think every judge in the circuit wants to as good an option as possible and not unduly burdensome. And that's, that's the danger. And so I just think that, you know, and I'm very nervous and trying to transmute questions of facts and the questions of law and taking district court discretionary judgments and having the Court of Appeals take those over. Well, so Your Honor, I think the narrowness of Pena Rodriguez is accepted. And the narrowness comes first off from the overtness of the racial statement. This distinguishes this case from the case that my colleagues voted for the Second Circuit. They, you know, the comments seem to me obscure. And, you know, there's good language in Pena Rodriguez. It's got to be a significant factor and not every offhand comment is going to be, is going to justify. I mean, that's right out of the Supreme Court opinion. With the overtness of the race aspect of the comments, you have to be able to investigate what else was said and what effect that had. And so again, this distinguishes our case from the case that my colleague from the U.S. Attorney's Office cited in the 28-J letter last week. What about the fact that Because there was no overt racial aspect to the statement, which distinguishes that case from this case. What about the fact that the motion to interview the jurors was made ex parte? So we addressed that at some length in our reply brief, Your Honor. And because it was an investigation, it's privileged. And there's nothing in the local rule that required it to not be And under Hickman, under, by analogy to Rule 17-C, under 3006-A. When did the government ever learn about this? Well, we told them about the comment from the juror immediately. So if they had wanted to file a Rule 21-C motion, they could have done so. When did the government learn that you'd made a motion to interview the juror? Well, they also knew about the allegation because of the motion to withdraw. And so the facts of what happened were known to the government within literal minutes of us knowing about them. We did not hide anything from them in that sense, as the district court made a finding to that effect. And when did they find out about the motion, though? I don't know the answer to that. I can clarify that with the child counsel. Let me back up to your standard that you gave in response to Judge Harris's question. Under that standard, then, if any juror made any comment about race, that would be good cause to investigate further. Well, overtly about race in the context of the deliberations of the case. Okay, I guess if you have a case that's about race, I think that would be different. So if you have an investigation of the KKK or some of the race-based group, I think that would be an exception. Tell me what your standard would be to demonstrate good cause for further investigation. So the standard comes from Gravely, and it is that the party seeking the review has made a threshold showing that there were statements overtly referencing race made by a juror in the jury deliberations. That's not what the Supreme Court said. It says to qualify the statement, it says, not every offhand comment indicating racial bias or hostility. So the Supreme Court has addressed in Peña-Rodriguez the very situation that you want to say is the standard, and they are saying that's not the standard. Not every offhand comment indicating racial bias or hostility will justify setting aside the no impeachment rule to allow further judicial inquiry. So, Your Honor. To qualify, I'm just reading right out of the Supreme Court opinion. May I answer just one question? In one second, because you need to hear these statements right out of the Supreme Court. The statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. And we're supposed to overturn a district court's assessment in this regard? The only thing I'm asking the court to overturn is the denial of the right to investigate the claim. We are not saying that we have made a substantive Rodriguez claim. It's the investigation that is the burden. And a white juror pressuring two black jurors to overturn their vote, which is a reasonable reading of the limited offhand comment, and it does show potential bias and animus. And so, if you would like to add a bias or animus, the language from the court into my proposed standard. I mean, certainly I think it's hard to imagine a racial overt statement, excuse me, Your Honor. Suppose that I added to your standard, for good cause, you've got to show potential bias or animus directed to the defendant. What would be your response to that? I think that jurors pressuring other jurors, particularly of the same race or of any minority race. So I think we could have a debate about if it's a black defendant and a Hispanic juror, but certainly white jurors pressuring minority jurors, I think, demonstrates bias as much as making a statement about the defendant and Peña Rodriguez itself. Some of the statements were about a witness, not about the defendant, which is analogous. Wouldn't you assume during the course of jury deliberations that deliberations could become heated? Certainly, sir. And if so, when that juror also told your attorneys, we worked it out. He also said, I'm sorry we had to do that. I think this is all requiring further investigation because we don't know if that means that they caved to the racial pressure. That's the burden. It's the investigation that's the burden. Which is all we're asking for, Your Honor, is the right to investigate our claim. Thank you. Thank you, Your Honor. Ms. Cook. May it please the Court. Caitlin Cook and Brian Samuels on behalf of the United States. I would like to start by answering the Court's question about when the United States first learned of the request to interview jurors, and that was on direct appeal upon the filing of the docketing statement in this matter. It was not disclosed until it was appealed to this Court. I think the questions before the Court today underscore a simple point, and that is that context matters. The defense made a disfavored request in a disfavored context, which Judge Allen properly overruled. This Court has long reviewed such requests for abuse discretion, and there's nothing in Pena-Rodriguez or any related case that compels a less-ferential standard of review here. And here the Court did not prevent all investigation. The Court's ruling was that the defense could not conduct one-sided juror interviews in secret based on the limited facts that it accepted ex parte. This Court can be assured that that was the scope of Judge Allen's finding because of the context in which it was made. Since the moment the verdict was returned, the defense repeatedly assured Judge Allen that there would be a motion for a new trial or a mistrial to include in its motions to jurors, and the Court clearly anticipated that motion in ruling on the matters before it. In the motion to withdraw, the Court reserved decision about withdrawal on the basis of defense counsel having witnessed this interaction until the filing of a motion for a new trial, something that the defense had offered in a footnote to their brief. In the ex parte context, the Court declined to draw inferences, and specifically the possible equivalency between racial bias to the defendant in an ex parte setting because it transcended the scope and nature of those filings, and she declined to make further findings without input from the government. And then with respect to the alternate request to interview juror spouses, the Court rejected that very literal reading of the text of Rule 24C because it was made in an ex parte setting. And despite having done that, the Court left open the possibility for further proceedings, twice specifying in her final order how such proceedings were to be conducted. Under seal, with service to the government, absent written good cause for further ex parte filing. This cannot be an abuse of the judge's discretion, particularly for a judge who sat and observed this jury for three days, answered numerous questions from the jury that evinced their careful and conscientious consideration of the evidence presented, specifically they asked for a password to the questions about accessing the different jail calls that were presented. And despite her own awareness of the timing and possible significance of what occurred at trial, including Defense Counsel's concerns when Ms. Williams asked to be withdrawn, that perhaps she may have been a holdout and that she was a minority. And then after the jury returned the verdict and they were polled and everyone individually affirmed without raising any questions of bias or pressure in the deliberations, Judge Allen was again aware that Defense Counsel was concerned about how deliberations may have proceeded after Ms. Williams' request was denied. And with those awarenesses, she went back into the jury room and interacted with the jury before they were excused. And there's nothing in the record to suggest that there was any concerns raised to her in that context. And so with that knowledge, with that experience, she's faced with these ex parte requests and absent any valid justification for presenting them ex parte, she repeatedly entertained them. And then after finding no indication of racial bias, nevertheless left the door open for defense to move further, which they chose not to do here. And I guess what she found, right, was no indication that  convict the defendant. And I totally get that the kind of racial issue that was raised in this case is very different from Pena-Rodriguez because it seems like it's, if we draw all inferences in favor of the defendant just for a moment and hypothetically, that it's sort of between jurors as opposed to directed at the defendant. But there is language in Pena-Rodriguez that suggests that, you know, this is a problem too, when some jurors views are being discounted during deliberations because of their race. And Pena-Rodriguez does talk about overt racial bias, casting serious doubt on the fairness and impartiality of the deliberations or the verdict. I mean, the deliberation, that's not how deliberations are supposed to work in juries where the black jurors don't get listened to because somebody thinks you just think that because of your race. So why isn't that enough to at least raise some issues for us? I think although the Supreme Court did acknowledge those dangers, there was a really, there was a countervailing consideration here. And those were the very important policies served by the no impeachment. But then let me ask you about that too, because of the concern behind the no impeachment rule, at least one of them, and definitely the rule behind 24C is juror harassment. I mean, we've got one juror in this case who obviously is willing to talk, so willing to talk that he approached defense counsel. And the only question is, can you let defense counsel talk to him for five minutes? Could be under the supervision of the judge. You could have to tell him first, if you don't want to talk to us anymore, you don't have to. Just give us five minutes so we can figure out what he meant. We were not allowed to even ask a follow-up question like, say what, what's going on here? Why can't we have that? There's, this juror is not going to feel harassed. This juror approached us. I think your Honor's question goes right to the core of the standard here. And I think the court did apply the standard that defense counsel is seeking. She, in her order on reconsideration, looked to good cause and the threshold showing. The threshold showing must be a threshold showing of a statement sufficient to set aside the no impeachment rule. And here in striking that balance, the Supreme Court said to qualify, it does have to show that the statement was a significant motivating factor in the juror vote to convict. Let me just ask one more follow-up question and I'll stop. So Pena Rodriguez, it certainly says, look, there's all these local rules and we get they're going to play a role. And then it says kind of the safety valve for that is sometimes jurors will come forward and that is how we will solve this problem, that there might be restrictions on the evidence available to make this case because sometimes a juror will come forward. But that's what happened here. And then to sort of double back and say, even when a juror comes forward, so you don't have to worry about harassment, you can't even ask a simple follow-up question. What exactly are you saying? It seems like that at least threatens to undermine any meaningful enforcement of this Pena Rodriguez standard. That's my concern. And I appreciate your Honor's concern. I think the Supreme Court in affirming the limits on post verdict contact would not, you know, it doesn't go so far as to say, if you're approached and the rule says you can't contact, set it aside and immediately ask the question. So defense counsel made the motion. We disagree with the manner in which it was made. But here, the statement as it was reported was, there was this, the two of you are doing this because of race and it's immediately followed by, we worked it all out. And that has to mean something. Nothing that was presented before the district judge gave that portion of the juror's statement any meaning. And so I think she was right to say, this isn't a statement that exhibits overt racial bias toward the defendant, suggesting that it may have resulted in his conviction on an improper basis. And when it's directed toward another juror, it comes with this assurance that the juror was able to work it out with the other jurors in deliberations. And so I think it's not an abuse of discretion to reject a possible equivalency, particularly in an ex parte setting. I would submit to the court here, there was a heightened need for advocacy. This trial was less than, was a matter of weeks after Pena Rodriguez was announced. The first motion to interview jurors came less than a month after that opinion. And the opinion creates this exception, but it affirms limits on juror contact. It affirms the principles underlying the no impeachment rule. And so in that context, you have a heightened need for advocacy to ferret these things out, to determine whether the threshold showing was made. And I think, um, let me pose this question to you related to that 24C rule, 24 good cause, uh, valuation. So some of the cases, as some of the cases point out, some districts have a no contact rule. Some districts have no rules. Some districts permit contact with jurors. So across the nation, apparently we have a wide variety of approaches in terms of jurors. If a rule exists in a jurisdiction that prohibits all contact, should that in any way affect our evaluation of what's an appropriate good cause standard? In other words, if these things came forward in a jurisdiction with a lesser restriction, um, the lawyers might be able to approach and at least ask questions. But in your jurisdiction, because there's this good cause standard, they can't ask anything. The lawyers behaved as they should have. They were approached. They made note of what they were told and didn't inquire further without seeking permission of the court. Does the fact that differing jurisdictions have different standards in any way, or should it in any way affect our evaluation of what's a preliminary show? I don't think that it should, Your Honor, in light of the language from Pena Rodriguez that affirmed the application of limits in these rules. The court, by virtue of its review of those rules and, uh, the districts that allowed impeachment for these sorts of statements and those that did not, were clearly aware of this variance and had they, um, I think the reasons for the no impeachment rule, um, affirmed the commitment of that matter to the districts that set the rules. And here it didn't bar no contact. Are we really one step behind Pena Rodriguez? They're looking at the no impeachment rule. More specifically, we're looking here initially at a rule, local rule that has this good cause standard in it, and that our first step in the analysis. I believe that it is, Your Honor, in the court in this case, though, in, in interpreting what good cause meant, looked first to Gravely, which was an older opinion based on improper bias, but in order to show good cause for juror interviews there, there had to have been a threshold showing of improper bias. That is a reason under 606B to set aside the no impeachment rule. Here. Then in response to Judge Harris, do you, or maybe I missed your answer. Do you agree or disagree that should the jurors have been deliberating on the basis of some type of improper racial animus, not necessarily directed to the defendant, but deliberating on that. Does that provide good cause to inquire further? I think that there may be a case in, in, in which that argument could be made. I would submit to your honors that this is not the case given the ambiguity of the statements. And I think that the, the threshold there is the one set by the Supreme court, that there has to be some indication that as that came up in deliberations, it was a significant motivating factor to convict. That's the reason and considered balance that the Supreme court struck between the need to protect the sixth amendment right to an impartial jury trial and the need to protect the integrity of our jury system, which the public confidence and trust is a compelling interest there. And the court struck that balance in a, in a narrow way, opening a door that has long been closed for, for the, for this basis. It's hard to see how the district court could have proceeded any more carefully than it, than it did. It didn't just dust this thing off, even though the application was made ex parte, said these are the statements. And, and I, you know, the, the idea, you know, in terms of group dynamics that a minority may not be listened to that, that seems to me truer in a, in a context where decisions are made by a majority vote, seven to five, eight to four. It's less true, I think, in a situation where the jury has to come to a unanimous verdict. People do need to listen to one another and they do need, as, as Juror Martin said, to work it all out. And circle back to a comment that Judge Osteen made earlier. When someone says, we worked it all out, we collectively worked it all out. That's the way a jury is supposed to function. Yes, Your Honor. There's to talk about things and to work it out. It didn't indicate anybody was excluded or not listened to. There wasn't any expression of bitterness on the part of any of the jurors, or there wasn't any expression that they were just ignored, or that their views were dismissed or not counted. Rather, there was a collective we. Yes. We, the jury, worked it all out. And jurors are presumed to follow their oath. And in this case, the court, from voir dire, through jury instructions, through answering multiple questions, very carefully here, especially in voir dire and the jury instructions, made clear you're not to have formed an opinion about the case before you're seated. Is there any reason you can't set aside prejudice or passion? That can't be the answer, or Peña Rodriguez would have come out the other way, right? I mean, the Peña Rodriguez at least establishes that that prophylactic kind of instruction is not dispositive. It's not, Your Honors, but I do think it weighs in favor here when you have a juror, yes, he's made a statement, the court said it's pertaining to race, but she looked to Peña Rodriguez to say, well, is pertaining to race enough? No, it's not. Because not every hot offhand comment, not just not every offhand comment. Yeah, but I feel like there are sort of two questions here, right? One is, is this statement, if it proves up enough to get you the relief you're entitled to under Peña Rodriguez? Does this statement mean Peña Rodriguez? And as I understand it, although your colleague is kind of preserving that issue and not conceding it, that's not her main argument today. Her main argument today is, fine, this one isn't good enough for Peña Rodriguez, but boy, why isn't it good enough for us to talk to a juror who has indicated already his willingness to talk to us for five minutes to see what else was going on in that jury room? Because there was something, this is not nothing. It's not a fishing expedition. There's a juror who is concerned enough about racial dynamics to come forward to defense counsel to talk about it. That's, it's somewhere between Peña Rodriguez and zero. And why, why isn't that enough given the minimal, I mean, I just don't know what is on the other side of the scale when you're dealing with a juror who has indicated willingness to come forward. I think. Just practically speaking, what's on the other side of the scale then? I think what's on the other side of the scale is the consideration that it has to be a statement that at a threshold. No, no, just practically speaking, on the one hand, I just, I totally understand your doctrinal argument. I really do. I, and I am, I was never a trial judge. I'm actually trying to work out what is the big deal here? If on one side of the scale, you have something that let's just concede or assume for a moment, it's not Peña Rodriguez level, but it is more than zero. It is a juror sufficiently concerned about the racial dynamics during deliberations that he came forward to the defense lawyers to talk about it. What's on the other side of the scale? If a district court judge said something like, look, just this one juror, only the one who's already indicated a willingness to come forward. I'm not letting you go on some fishing expedition with other jurors just to find out what did he mean? Is there anything more that he wanted to tell you? That's it. Five minutes, you know, whatever other conditions one can imagine, tell him first. If you don't want to tell us anymore, you don't have to. I think first and foremost, factually, what's on the other side of the scale is his assurance that we worked it all out as Judge Wilkinson observed the collective, we, the jury, you know, the statement comes. But what's the big, I totally understand why you think that might be an excess of caution, but say the defense council wants to know, what do you mean by we worked it all out? Do you mean two of you were just like, nevermind, we want to go home or do you mean something else? And I think Your Honor gets at the point that Judge Wilkinson made with my colleague, which is, it is the investigation. It is the interrogation of jurors that brings about the harms of the no impeachment rule. But even jurors who have already expressed a willingness to talk about the matter? I, I think Your Honor that. And if you tell them first, if you don't want to talk more, we're out of here. This is only with your permission. I think that in the context that it was made, there was a, there's real risks. We're, you get multiple intrusions here because if the defense goes ex parte and has that five minute conversation, inevitably, if the juror does speak with- I guess I'll go on that point to follow up on Judge Harris's thing about taking a practical view. The investigation as it is, it would never be five minutes. There is no way. It will be question after question and the answers will raise questions and it will be, a lot of these things are going to be juror harassment and they're going to be badgered. And to say the court can control the court doesn't, the court has an awful lot of things to do. But this is opening the door to badgering. And then the juror goes back and tells their friends and their neighbors and say, look, I gave of my time to participate in this trial and to render an honest verdict and it wasn't even over after we rendered the verdict. There was this whole other proceeding. Boy, you never want to do this jury thing because it isn't even over once the verdict is handed down. And then you build up, I can tell you with this kind of stuff, you build up in the community a resistance to jury service and that's the whole purpose of the no impeachment rule, this simple notion that at some point a juror's job is complete, it's done. You've rendered your civic service, it's very much appreciated, and at some point you can get on with your life rather than hearings afterwards, which I promise you will not be five minutes. It will be other questions raised. It will, it is, it's opening the door to badgering. I see I'm out of time, Your Honor, if I may comment on your point briefly. I think it does guarantee multiple intrusions because there will be questions raised. The court and or the government may want to go back. And as Justice Alito noted in the dissent to Pena-Rodriguez, when the overtures are made by the party who lost, there's a real risk that a juror who maybe reluctantly joined the verdict might be persuaded to the view that they did so on an improper basis. And after that seed is planted, the truth is hard to know. So because the person that's going to be doing the questioning is an advocate. Yes. And that person is going to come to that question with an extra grind, mad about the verdict. They're angry about the verdict. They're going to try at all costs to make it racially tinged and they're coming at it from the standpoint of the adversary system. And as they should, they're representing a client and they're going to do everything within their power to try to get that juror to admit to what they want the juror to admit. And that is going to be badgering and it's opening the door to something very pernicious on the basis of something as innocuous as this. If it had been something more substantial, it would have been right within the core of Pena-Rodriguez. But you have a district judge who's acted carefully and not only that, faced with an ex parte request, still followed the word and the standard of Pena-Rodriguez to the letter. Yes, Your Honor. Thank you. I'm out of time. Thank you. Thank you, Your Honors. I have five quick points that I would like to make in rebuttal. With regard to the statement, we worked it all out, that has gotten a lot of attention. I would like to add that Juror Martin also said, I'm sorry we had to do that. I think without further investigation, which is what we're asking for, it is hard to put the weight on the statements that my colleague would like to put on them, which is, again, the relief here is investigation, not the motion for a new trial. What exactly would you have thought that a juror would say to the defense team as they walked out? What would I thought that he would have said? I mean, generally, in my experience, lawyers dodge jurors as much as possible because they're not allowed to contact them. This will seem to be a nice, polite juror, right? And so it wouldn't be unusual if the juror said, you know, you guys did a great job. I'm sorry it worked out that way. Isn't that kind of an innocuous statement? I'm sorry we had to do that. In the context of the other statements made, however, with, you know, it's a race, it's a race thing, we worked it out. I mean, I'm just saying, if you want to put weight on, we worked it all out to be, there's no problem here. I think that is counterbalanced both by the fact that he felt the need to approach defense counsel at all, and also by, I'm sorry we had to do that. I'm just saying, and again, in the, all we're asking for is to . . . There's a lot of different interpretations to assign, which brings me to another point I want to ask you, and that is, you talked about findings of fact, really at its core, we're asking the trial judge to take these statements and decide whether or not they rise to a level to suggest that race was improperly injected in these proceedings. It could be that some juror made an offhand comment, just in the heat of the moment, and regretted it later, and they worked it out. It could be that a juror was back there with race, racial animus on their mind. These are possibilities. In making this preliminary showing, isn't the district judge exercising her experience and discretion to decide whether or not this statement tilts toward improper racial animus, or simply an offhand comment during the course of deliberations, not a final finding, just is there enough to suggest we should inquire further? Isn't that the two sides of the coin that the district judge is making in light of the whole proceeding? I want to add one phrase to your question, and then I'm going to agree with you. I think these are the two sides of the coin. Is it an offhand comment? Does it display racial animus infecting the jury deliberations? However, it's not the standard that the district judge has to decide. And I actually agree with you. I think you're going to . . . This is a mixed question of law and fact. It's whether these facts, as alleged, meet a specific legal standard. The legal standard has been left open by Pena, but the legal standard, which is what I'm adding, the legal standard is good cause. That's what I'm adding. Is the allegation . . . Judge said no, because I don't think this shows even approaches to improper racial . . . So, and this is actually one of the next points I wanted to make, Your Honor, is that I just looked at Gravely very quickly, and my recollection is, and looking at it, nothing in Gravely says that the allegation to be a threshold showing has to make a substantive violation out. It has to be not a fishing expedition. It has to be a threshold showing, but your threshold showing doesn't have to be what a civil lawyer would call a prima facie case. That's not in Gravely. And so, to the extent that that was the assumption of one of the questions, or maybe that my colleagues said I don't remember how that played out, Gravely doesn't say you have to make a prima facie case with your threshold showing. It just has to be a threshold showing of the claim in that case under Rule 606. And so, I think in this case, the legal error, an illegal error, is always an abuse of discretion. So, regardless of which standard of review applies here, I think, frankly, it is a mixed question, an error of law is always an abuse of discretion. And so, a misapplication of the judge saying you have to meet the payment standard. That's the whole problem, because it's not an error of, Judge Osteen is suggesting to you, this is not an error of law. It is grist for the mill of district court findings. Good cause, this kind of thing, whether something is an offhand comment, that's grist for the mill. You say, oh, this is just all we need to make a preliminary showing. But there have been so many situations where something has been advertised to me as just a baby step, and then it gets in deeper and deeper and deeper. And pretty soon, you've changed, to some extent, the very nature of jury service. Your Honor, the court answered that question in Pena. Ms. Pratt, it always starts with the baby steps, the so-called baby steps, that pile upon one another and change the nature of jury service. And the danger here is that this kind of thing is going to be litigated, litigated. Your Honor, our request was very limited, and the court made that call in Pena. Rule 606 gives way to racial bias, and so must Rule 24. That's the holding of Pena, and the Supreme Court has made its decision, and we all have to figure out how to apply it. So much as the federal rules of evidence have to give way to a colorable claim and a threshold showing of good cause that there may be a constitutional violation of my client's right to an impartial jury, so too must the local rule give way. As you said, and this is my final point I'd like to make to Jostein, there are jurisdictions that have no bars. There are jurisdictions that have a little bar. There are jurisdictions that have good cause rules. The local rules vary. The arbitrariness of how a layperson phrases his description of the potential racial animus should not change my client's ability to investigate the potential constitutional claim. And so much as Rule 606 gave way, so much Rule 24, if we can make a threshold showing that it's not a fishing expedition. This was a colorable claim, and we had a right to investigate it.  Thank you. Thank you, Your Honor. Is there any more questions? No. We thank you. Always enjoy your arguments, and we've come down and-
judges: J. Harvie Wilkinson III, Pamela A. Harris, William L. Osteen Jr.